UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| AMERICAN TOWERS LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BPI, INC., et al.,<br><br>    Defendants. | Civil No. 12-139-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

When construction projects go awry, the resulting civil litigation is often as jumbled as the marred structure. The parties usually dispute what caused the project to fail, and causation is a fact-bound inquiry. Both parties then present expert testimony tending to show that the cause they prefer was, in truth, the culprit. Courts are ill-equipped to resolve disputes between experts about critical facts, and at the summary judgment stage, courts are not authorized to do so. So it should come as no surprise that the heavily factual dispute between the parties here must proceed to trial.

**BACKGROUND**

American Towers LLC operates wireless and broadcast communications sites around the country. R. 139-1 ¶ 4. After conferring with one of its customers, American Towers decided to erect a cell tower in Prestonsburg, Kentucky. R. 134 at 18; R. 139-5 at 4. Its plans also called for the construction of a tower compound and an access road, leading up a hill to the cell tower. R. 134 at 19–20; R. 139-5 at 4. American Towers accepted bids for the project from general contractors. *Id.* at 18–20. American Towers selected the bid of BPI,

Inc., the companies executed a Master Contractor Agreement (the "agreement" or the "contract"), and BPI began building. *See* R. 138-2; R. 134 at 19–20.

After breaking ground on the project, BPI encountered what it regarded as a problem with American Towers' plans. R. 134 at 74. BPI thought the road's design was flawed. *Id.* The agreement imagined just such a scenario. If BPI recognized a problem, it was to stop work immediately, inform American Towers, and American Towers would then instruct BPI on how to proceed. Agreement § 1.4. BPI therefore stopped work on the road and told American Towers about the problem. R. 134 at 74. BPI also proposed a solution to the problem—a modification of the road's shape—and American Towers approved. *Id.* at 74–75. BPI then resumed construction in accordance with its new plan.

Alas, the solution was no solution at all. Less than one year later, the road BPI constructed collapsed in a landslide, damaging surrounding property and leaving the tower compound inaccessible and useless. R. 132 at 40–43; R. 134 at 23. The result was a flurry of litigation. American Towers sued BPI, alleging that BPI breached the agreement. BPI sued its subcontractors, the subcontractors sued each other, and everybody sued the insurer. After discovery, there were nearly as many motions for summary judgment as parties. This order deals with American Towers' and BPI's cross-motions for summary judgment only. *See* R. 138; R. 139. For the reasons explained below, this matter must proceed to trial, and both parties' motions for summary judgment are denied.

## DISCUSSION

Summary judgment is appropriate where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). When determining whether such a dispute exists, the Court must view the facts in the light most favorable to the non-moving party. *Scott v.*

2

*Harris*, 550 U.S. 372, 378 (2007). If—viewed from that angle—the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party, then the Court cannot grant summary judgment. *Cordell v. McKinney*, No. 13-4203, 2014 WL 3455556, at *4 (6th Cir. July 16, 2014).

Because federal jurisdiction is premised on the diversity of the parties, the Court must apply Kentucky's substantive law. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss caused by the breach. *Metro Louisville/Jefferson City Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009).

**I.  BPI Is Not Entitled To Summary Judgment, Because The Contract Does Not Assign The Obligation To Consult A Design Engineer To American Towers Only**.

BPI's main argument is that the contract required American Towers—not BPI—to consult a design engineer after BPI reported problems with the original design of the road. R. 138-1 at 14–16. BPI traces American Towers' supposedly sole responsibility for consulting a design engineer to the agreement's division of labor. The contract contemplated that American Towers would provide BPI with "drawings, specifications," and "instructions." Agreement § 1.4. BPI, on the other hand, was responsible for "all construction means, methods, techniques, sequences and procedures . . . ." Agreement § 4.1.1. The contract provided that BPI would complete its tasks in a "workmanlike manner and with the highest degree of skill and care exercised by reputable contractors performing the same or similar services . . . ." *Id.* The idea, BPI says, is that American Towers was responsible for formulating the overall plan and design, and BPI was responsible for executing the plan precisely. Because consulting a design engineer is part of crafting the

3

design—not part of executing the design—the responsibility to do so belonged to American Towers.

BPI says that the critical portion of the agreement confirms its interpretation. After BPI informed American Towers that it thought the road was poorly designed, the agreement required American Towers to "issue written instructions" about how to proceed to BPI. Agreement § 1.4. BPI says that its obligation was merely to execute whatever plan American Towers gave it, so American Towers was obliged to consult a design engineer before telling BPI what to do. American Towers therefore must bear the consequences, BPI says, of its own failure.

This argument glosses over key facts that weigh against BPI. True, when BPI encountered a problem, the contract required only that BPI inform American Towers and wait for instructions. Agreement § 1.4. But BPI apparently did more than the contract required. BPI proposed a new plan to American Towers, which American Towers approved, and which BPI proceeded to implement. R. 134 at 74. Dr. Ihab Saad, an expert witness, submitted a report explaining that BPI's vow to complete its work with "the highest degree of skill and care" exercised by similar contractors required it to consult a design engineer before proposing the new plan to American Towers. R. 139-7 at 54–56. Expert testimony is admissible to elucidate a specialized standard of care for the finder of fact. *Charter Foods Inc. v. Derek Eng'g of Ohio, Inc.*, Civil No. 09-06-ART, 2009 WL 4825150, at *5 (E.D. Ky. Dec. 11, 2009). Indeed, if the fact finder would not understand the standard absent such testimony, then an expert may be required. *Id.*; *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009). So, viewing the facts in the light most favorable to American Towers, a jury could find that BPI proposed the new plan to American Towers,

and—if the jury credits Saad's testimony—that the contract required BPI to consult a design engineer before doing so.

BPI has one round left in the chamber. No matter, BPI says, that the contract may have required BPI to consult a design engineer before proposing its plan, because the contract required American Towers to "issue written instructions" after learning of the problem. And the word "instruction" requires American Towers to do something more than merely "accept" or "approve" BPI's proposal. R. 145 at 13. To "instruct," American Towers contends, means something very different from merely "accepting" or "approving." *Id.*

Not necessarily. A competent speaker of English might commonly recognize the giving of approval as a form of instruction. For example, during the Cuban Missile Crisis, President Kennedy famously approved a plan to stop ships carrying offensive weapons from delivering their cargoes to Cuba. The President's approval of the plan also functioned as an order to implement it and as an "instruction" to the Navy to affect its object. Thus, it would make sense to say both that President Kennedy approved the plan and that he ordered the so-called quarantine of Cuba. So too here. American Towers approved BPI's plan, but by doing so it also instructed BPI on how to proceed. This common understanding even comports with the dictionary definition upon which BPI relies. *See* R. 153 at 11 (citing the Merriam-Webster online dictionary, which defines "instruction" to mean "a statement that describes how to do something: an order or command . . . ."). Other more ordinary examples illustrate the point, too (Q: "Coach, when I tackle, should I try to put my helmet on the ball?" A: "Yes." Q: "May I send you the first draft of this brief by Thursday?" A: "Yes.").

5

Because it is possible to give an instruction by approving a proposed plan, BPI's argument fails. American Towers therefore did not necessarily breach the agreement by failing to consult a design engineer before accepting BPI's recommendation and instructing BPI to proceed in the manner it had proposed. And because the duty to consult a design engineer did not belong to American Towers as a matter of law, BPI is not entitled to summary judgment.

## II.  American Towers Is Entitled To Summary Judgment Regarding Breach.

American Towers' motion for summary judgment requires careful parsing of the deposition testimony proffered by each side. American Towers' plans required BPI to use particular so-called "fill" material for the construction of the road and to consult a geotechnical engineer during portions of the work. *See* R. 139-2 at 7, 27. According to the report of Fikret Atalay—an expert witness retained by American Towers—BPI did not comply with the fill requirements and never consulted an engineer. R. 139-5 at 17. For both reasons, American Towers says, it is entitled to summary judgment as to the element of breach.

American Towers is half-right: There is no genuine dispute regarding BPI's failure to consult an engineer, but Atalay's deposition testimony is not clear enough as to the content of the fill material to warrant summary judgment. BPI offers no real response regarding its failure to consult a design engineer. It merely cites a few conclusory lines from the deposition of its site supervisor, who opined that BPI satisfied the contractual standard of care. R. 145 at 3. But BPI's supervisor was not disclosed as an expert witness who might explain the standard of care, and unsupported testimony as to legal conclusions does not create a genuine issue of material fact. *L.F.P.IP, LLC v. Hustler Cincinnati, Inc.*, 533 F.

6

App'x 615, 620–21 (6th Cir. 2013). It is therefore undisputed at this stage that BPI breached the agreement by failing to consult a geotechnical engineer as required by the contract.

American Towers' other argument for summary judgment fails, because Atalay's deposition testimony is somewhat muddled. During his deposition, Atalay apparently admitted that he could not be sure of his conclusions regarding the fill material. R. 129-1 at 29 ("Q: So in terms of figuring out what exactly the composition of that fill material or the compaction of that fill material at the time that it was actually placed . . . you can't do? A: Right."). American Towers attempts to rehabilitate Atalay's testimony, arguing that a full reading of the deposition suggests that he meant to say only that he could not perform one particular test. R. 154 at 6. Perhaps that is the best reading of the full deposition, but that is far from clear. At this stage, the Court cannot weigh the testimony or resolve ambiguities. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). It can only take stock of whether a genuine issue of material fact exists for trial. *See id.* Atalay's answer suggesting that he could not determine the composition of the fill material requires the Court to submit this issue to the jury.[1]

Nor is American Towers entitled to summary judgment regarding causation. The record at this stage reflects a classic battle of the experts. According to Atalay, the road collapsed because of BPI's "poor construction techniques" and failure to prepare the

---

[1] American Towers gestures at one other argument regarding breach—that BPI was required to consult a design engineer before proposing its revisions to American Towers' original plan. *See* R. 154 at 9. But the deposition testimony American Towers points to is even more muddled then Atalay's. Saad apparently relied on a contractual provision that American Towers does not even cite, *see* R. 133 at 35–36, and he may have based his conclusion on what he believed to be a set of "best practices" that could be distinct from the contractual standard of care. *See id.* at 15–17 (apparently distinguishing "best practices" in the industry from the contractual standard of care). And at one other point in his deposition, he seemed to state that the contract left all design responsibilities to American Towers. *Id.* at 21. The Court therefore cannot say that the jury must accept American Towers' characterization of Saad's conclusions, so American Towers is not entitled to summary judgment. *See Dawahare v. Spencer*, 210 F.3d 666, 671 (6th Cir. 2000) (warning courts to be careful before awarding summary judgment based on expert testimony that the fact finder may not accept).

construction site adequately. R. 139-5 at 4, 15–16. But BPI's expert, Wayne Karem, opined that the damage had nothing to do with faulty construction. R. 145-2 at 16. Instead, Karem concluded that the road collapsed due to the "geological and soil conditions of the mountainous topography around Prestonsburg." *Id.* The Court cannot resolve the experts' fact-bound disagreement. *Anderson*, 477 U.S. at 249. That responsibility falls to the jury at trial. *Id.*[2]

## CONCLUSION

American Towers is entitled to summary judgment regarding one particular form of breach: There is no genuine dispute of material fact regarding whether BPI consulted a geotechnical engineer, as required by the contract. BPI did not, and by failing to do so it breached the agreement. In every other respect, the parties' motions for summary judgment are denied.

Accordingly, it is **ORDERED** that:

(1) American Towers' motion for summary judgment, R. 139, is **GRANTED IN PART AND DENIED IN PART**. American Towers is entitled to summary judgment regarding breach, because BPI failed to consult a geotechnical engineer as required by the contract. In all other respects, American Towers' motion is **DENIED**.

---

[2]This conclusion also suffices to dispose of American Towers' claims regarding BPI's failure to comply with the contract's warranty and indemnification provisions. *See* R. 139 at 21–22. Because the Court cannot say whether BPI's breach of the contract caused American Towers' damages, American Towers is not entitled to summary judgment on those claims either.

(2) BPI's motion for summary judgment, R. 138, is **DENIED**.

This the 4th day of August, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge