UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| AMERICAN TOWERS LLC, | )<br>) |
| Plaintiff, | )<br>) Civil No. 12-139-ART<br>) |
| v. | )<br>) |
| BPI, INC., et al., | ) **MEMORANDUM OPINION AND**<br>) **CERTIFICATION ORDER**<br>) |
| Defendants. | )<br>) |

\*\*\* \*\*\* \*\*\* \*\*\*

This insurance dispute arises from the failure of a construction project, for which BPI, Inc., was the general contractor. After the project went awry, BPI's client, American Towers LLC, filed this lawsuit. BPI carried a general commercial liability policy that it had purchased from Nationwide Mutual Insurance Company. The dispute currently before the Court is narrow: What portion—if any—of BPI's liability is Nationwide obliged to insure?

That question, unfortunately, takes some getting too. First, the Court must determine which state's law applies (West Virginia's or Kentucky's). Then, the Court has to sort out which version of the state's law applies (the one in effect at the time of the accident, or the one that prevails now). For the reasons explained below, West Virginia law applies. Which version of West Virginia law applies is not clear. The Court will therefore certify two questions to the Supreme Court of Appeals of West Virginia.

## BACKGROUND

The Court's prior opinion explains the facts of this case in detail. *See* Appendix A; R. 162. For present purposes, the following summary suffices. American Towers LLC hired

BPI as the general contractor for a construction project in Prestonsburg, Kentucky. *Id.* at 1–2. The project required BPI to build a cell tower, a compound, and an access road. *Id.* Less than one year after completing construction, the road collapsed, allegedly because of the faulty workmanship of BPI and its subcontractors. *See id.* at 2. American Towers sued BPI, and BPI filed a cross-claim against Nationwide, claiming that its potential liability was covered under its insurance policy. *See* R. 21 at 4. Nationwide responded by seeking a declaration that it was not obliged to insure BPI. R. 27 at 15. After discovery, BPI and Nationwide filed cross-motions for summary judgment. R. 137; R. 141.

## DISCUSSION

Summary judgment is appropriate where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). When determining whether such a dispute exists, the Court must view the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If—viewed from that angle—the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party, then the Court cannot grant summary judgment. *Cordell v. McKinney*, No. 13-4203, 2014 WL 3455556, at *4 (6th Cir. July 16, 2014).

Because federal jurisdiction is premised on the diversity of the parties, state law controls the interpretation of the insurance policy. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). But which state's law controls? The parties disagree on that point. To resolve the dispute, the Court must apply Kentucky's choice of law rules. *Security Ins. Co. of Hartford v. Kevin Tucker & Assocs.*, 64 F.3d 1001, 1005 (6th Cir. 1995) ("In a diversity action, the district court is obligated to apply the choice of law

rules of the state in which it sits."). As detailed below, those rules point to West Virginia's substantive law.

I.      **West Virginia Law Applies To This Dispute.**

Kentucky employs the "most significant relationship" test to resolve choice of law questions in a contract dispute. *State Farm Mut. Auto Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013); Restatement (Second) of Conflict of Laws § 188 (the "Restatement"). That test requires the Court to consider several factors: Where the contract was negotiated; where the contract was performed; the location of the contract's subject matter; and the parties' domiciles, residences, places of incorporation and places of business. *Hodgkiss-Warrick*, 413 S.W.3d at 879; Restatement §§ 188, 193.

Like most multi-factor balancing tests that provide no guidance about how to weigh each factor, this one is of little use without more specific instructions. Perhaps for that reason, Kentucky's courts have explained that particular factors are more important in particular kinds of cases. When considering liability insurance contracts, the Supreme Court of Kentucky focuses primarily upon the parties' expectations regarding the "principal location" of the insured risk. *Hodgkiss-Warrick*, 413 S.W.3d at 879. Absent a choice-of-law clause, Kentucky's courts look to the residence of the named insured and the contract itself to determine what the parties' expectations were. *See id.* (referring to "our general choice-of-law rule" and collecting cases applying the law of the named insured's state of residence).

The named insured in the contract here was BPI. BPI is incorporated under the law of West Virginia, and BPI maintains its principal place of business in West Virginia. R. 146-1 ¶ 2. The policy was issued through a West Virginia insurance agency, R. 146-4 at 36, and the policy includes multiple West Virginia endorsements, *Id.* at 38–42, 44. The contract

3

insured BPI generally—wherever it operated—and it is undisputed that the contract did not refer to either the Prestonsburg project or Kentucky. The contract did not include a choice-of-law clause.

As the preceding paragraph demonstrates, Kentucky has precious little to do with the parties' dispute. True, the accident for which BPI now seeks coverage occurred in Kentucky, but that "fortuitous fact" matters less than BPI's residence and the contract's multiple connections with West Virginia. *See Hodgkiss-Warrick*, 413 S.W.3d at 879 (applying the law of the named insured's state of residence—to which the contract specifically referred—rather than Kentucky law, even though the accident occurred in Kentucky). West Virginia law therefore applies to this case.

Nationwide resists this conclusion, arguing that *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662 (E.D. Ky. 2010), requires the application of Kentucky law. R. 137-1 at 6–13. In *Asher*, this Court applied Kentucky law, because no other state had a sufficiently weighty interest in the case. *See id.* at 674. But this case differs from *Asher* in a critical respect. *Asher* observed that the named insured was not a part of the case, and the result turned in large part on the named insured's absence. 737 F. Supp. 2d at 672–73 ("The named insured, Atlas, is no longer before this Court. *Therefore*, the location of the contract does not determine the choice of law question in this case.") (emphasis added); *id.* at 674 ("[W]ithout Atlas, Illinois lacks a significant relationship to the transaction . . . ."). Here, of course, the named insured is before the Court and insists that the law of its home state applies. So the analogy to *Asher* is unpersuasive.

To sum up, the residence of the named insured and the contract itself both point to the application of West Virginia law. Kentucky merely happens to be the location of the

accident. Under such circumstances, West Virginia law controls. *Hodgkiss-Warrick*, 413 S.W.3d at 879.

## II. Key Questions In This Case Depend On Unsettled Questions Of West Virginia Law.

BPI's policy covered "property damage" caused by an "occurrence." R. 27-2 at 20 (explaining that the policy covers property damage only if the damage is "caused by an 'occurrence'"). Determining whether BPI's insurance claims arise from an "occurrence" requires the Court to traverse what has become familiar ground for West Virginia's courts. The turf is particularly well-trod in the construction field. Courts have repeatedly dealt with cases in which a client sued a contractor, claiming that the contractor breached the construction contract by doing its job poorly. The contractor then sought coverage from its insurer, requiring the court to determine whether the contractor's allegedly poor performance qualified as an "occurrence." *E.g.*, *Erie Ins. Property & Cas. Co. v. Pioneer Home Improvement, Inc.*, 526 S.E.2d 28 (W. Va. 1999). Courts describe these claims as claims for "faulty workmanship." Until recently, damages arising from "faulty workmanship" were not caused by an "occurrence" under West Virginia law, so an insurer was not obliged to cover such claims. *Id.* at 34 ("[D]amages to a building sustained by any owner as the result of a breach of a construction contract due to a contractor's faulty workmanship are a business risk to be borne by the contractor and not by his commercial general liability insurer."); *Corder v. William W. Smith Excavating Co.*, 556 S.E.2d 77, 83 (W. Va. 2001).[1]

But in 2013—after American Towers filed this lawsuit—the Supreme Court of Appeals of West Virginia overruled its prior decisions and reversed course. Now, "faulty

---
[1] The policies in *Pioneer* and *Corder* and the contract here all defined "occurrence" in nearly identical terms. Compare R. 27-2 at 33, with *Pioneer*, 526 S.E.2d at 31; *Corder*, 556 S.E.2d at 83.

workmanship" does qualify as an "occurrence," so damages resulting from such claims are covered under BPI's policy. *Cherrington v. Erie Ins. Property & Cas. Co.*, 745 S.E.2d 508, 521 (W. Va. 2013) (expressly overruling prior cases holding otherwise).

That brings the Court to the unsettled questions of West Virginia law at the heart of this case. At least a portion of BPI's potential damages arise from what West Virginia law classifies as "faulty workmanship": American Towers hired BPI to construct a road, and that road collapsed—possibly because BPI constructed it poorly. *See* R. 162 at 6–9. If *Cherrington* applies retroactively, then all of BPI's potential damages attributable to "faulty workmanship" arise from an "occurrence" (*i.e.*, the faulty construction of the road).

But if *Cherrington* does not apply retroactively, then the Court must parse the damages arising from "faulty workmanship" from the damages arising from an "occurrence." The damages relating to the replacement of the road do not arise from an "occurrence." *Pioneer*, 526 S.E.2d at 33 (explaining that the contractor, not the insurer, must bear the costs of repairing or replacing its faulty work product). It is unclear, however, whether the road's collapse nevertheless qualifies as an "occurrence," so that the damage inflicted upon surrounding property may be covered under the policy: Pre-*Cherrington* cases point in opposite directions. *Compare Corder*, 556 S.E.2d at 84 (suggesting that an "occurrence" can never be "tied to the original acts" of faulty workmanship), *with Pioneer*, 526 S.E.2d at 33 (suggesting that some damages caused in large part by faulty workmanship may result from an "occurrence").

The Court is aware of no case deciding whether *Cherrington* applies retroactively, and the question is best addressed—in the first instance—by the Supreme Court of Appeals of West Virginia. The answer may turn on delicate questions of policy. *See Findley v. State*

*Farm Mut. Auto. Ins. Co.*, 576 S.E.2d 807, 823 (W. Va. 2002) (considering the need to "shield insurers from the imposition of augmented substantive liabilities" when determining whether to apply a decision retroactively). The decision may also implicate constitutional questions. *See Harleysville Mut. Ins. Co. v. South Carolina*, 736 S.E.2d 651, 658 (S.C. 2012) (holding unconstitutional a South Carolina law that retroactively defined "occurrence" to include claims of "faulty workmanship"). And if *Cherrington* does not apply retroactively, then the Court will require guidance on pre-*Cherrington* law regarding whether the collapse of the road qualifies as an "occurrence." The Court will therefore certify two questions of law to the Supreme Court of Appeals of West Virginia, pursuant to West Virginia's certification statute. *See* W. Va. Code § 51-1A-3.

The questions of law to be answered are: (1) does *Cherrington* apply retroactively? And, (2) if *Cherrington* does not apply retroactively, and the road collapsed because it was poorly constructed, then does the collapse of the road nevertheless qualify as an "occurrence"?

West Virginia's certification statute helpfully lays out certain requirements for the certifying Court. *See* W. Va. Code § 51-1A-6. Accordingly, this order has stated the questions of law to be certified and recited the facts relevant to the questions of law. *See id.* The Court acknowledges that the receiving court may reformulate these questions. *See id.* The Court will include the names and addresses of counsel at the end of this opinion. Should the Supreme Court of Appeals require more context than the body of this order provides, the Court has attached its prior opinion as appendix A.

Accordingly, it is **ORDERED** that:

(1) The questions recited above are **CERTIFIED** to the Supreme Court of Appeals of West Virginia.

(2) The clerk of court **SHALL FORWARD** this order to the Supreme Court of Appeals of West Virginia. Upon request, the clerk of court shall also forward the record to the Supreme Court of Appeals of West Virginia.

(3) The names and addresses of counsel for BPI are:

   a. Lee A. Smith, Reynolds Law Offices, PSC, 112 W. Court Street, Suite 100, Prestonsburg, KY 41653.

   b. W. Mitchell Hall, Jr., VanAntwerp, Monge, Jones & Edwards, 1544 Winchester Avenue, Suite 500, P.O. Box 1111, Ashland, KY 41105-1111.

   c. William H. Wilhoit, 103 S. Hord Street, P.O. Box 35, Grayson, KY 41143-0035.

(4) The names and addresses of counsel for Nationwide are:

   a. Drew Byron Meadows, Golden & Walters PLLC, 771 Corporate Drive, Suite 905, Lexington, KY 40503.

   b. J. Dale Golden, Golden & Walters PLLC, 771 Corporate Drive, Suite 905, Lexington, KY 40503.

   c. Kellie Marie Collins, Golden & Walters PLLC, 771 Corporate Drive, Suite 905, Lexington, KY 40503.

(5) The parties' cross-motions for summary judgment, R. 137; R. 141, are **DENIED WITHOUT PREJUDICE**. The parties **SHALL INFORM** the Court after the Supreme Court of Appeals of West Virginia acts on this certification order. The

Court will entertain renewed motions for summary judgment after that court either answers the certified questions or declines to do so.

This the 18th day of August, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge