UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| AMERICAN TOWERS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BPI, INC., et al., )<br>)<br>Defendants. )<br>) | Civil No. 12-139-ART<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In another turn in this ongoing maze of litigation, American Towers LLC seeks insurance coverage from Nationwide Mutual Insurance Company for damages arising from a failed construction project. The insurance policy is the same policy governing the dispute between Nationwide and the contractor for the project, BPI, Inc. BPI is also the named insured on the policy. American Towers, while not a named insured, is an additional insured on the policy.

The parties disagree about whether Kentucky or West Virginia law governs their dispute. The answer comes from the Court's previous opinion finding that West Virginia law controls the interpretation of the same insurance policy in the fight between BPI and Nationwide. To ensure a consistent and uniform interpretation of the same insurance policy, West Virginia law also controls the claims between American Towers and Nationwide.

## BACKGROUND

The Court's prior opinions fully set forth the details of this case. *See* R. 162; R. 163. For purposes of this issue, the Court provides a brief summary: American Towers, a

Delaware limited liability company with Boston offices, hired BPI, a West Virginia corporation, as the general contractor for a construction project in Prestonsburg, Kentucky. *See* R. 162 at 1–2; R. 9 ¶¶ 1, 2. The project required BPI to build a cell tower, a tower compound, and an access road. *See* R. 162 at 1–2. Under the contract between BPI and American Towers, BPI agreed to maintain insurance, which it procured through Nationwide, an Ohio non-profit company. R. 167-1 ¶¶ 11.1.1–11.1.3; R. 27-2. That insurance policy listed American Towers as an additional insured. R. 27-2 at 63.

Less than one year after BPI and its subcontractors constructed the access road, the road collapsed, allegedly because of the faulty workmanship of BPI and its subcontractors. *See* R. 162 at 2. American Towers sued BPI and Nationwide, claiming that BPI breached the contract and Nationwide was responsible to American Towers as an additional insured. *See* R. 9 ¶¶ 71–91. Nationwide responded by seeking a declaration that it had no obligation to insure BPI. R. 27 at 15. After discovery, American Towers and Nationwide filed cross-motions for summary judgment. R. 136; R. 140.

## DISCUSSION

Before deciding a motion for summary judgment, the Court must first determine what law applies. State law controls the interpretation of the insurance policy because the Court's jurisdiction derives from the parties' diversity of citizenship. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). Here, American Towers and Nationwide disagree on which state's law governs. To resolve the dispute, the Court applies Kentucky's choice-of-law rules. *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) ("In a diversity action, the district court is obligated to apply the choice

of law rules of the state in which it sits.").  Kentucky's rules lead to the conclusion that West Virginia law must govern the dispute between American Towers and Nationwide.

## I. West Virginia Law Controls the Dispute

A choice-of-law analysis is necessary only if the laws of the states actually conflict. *See Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010). The insurance dispute involves several different arguments, some of which may turn out differently under Kentucky and West Virginia law.  First, the policy reimburses for damage caused only by an "occurrence."  R. 27-2 at 20.  Kentucky and West Virginia courts may interpret "occurrence" as used in an insurance policy differently, *compare Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010), *with Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 521 (W. Va. 2013), though the authoritative resolution of that issue depends on a decision from the Supreme Court of Appeals of West Virginia on *Cherrington*'s retroactivity, *see* R. 163 at 7.

Second, the states differ in when an insurer may rely on exclusionary provisions in the policy.  Nationwide seeks to invoke various exclusionary provisions to avoid liability. *See* R. 136-1 at 20.  Under West Virginia law, an insurer "must bring such [exclusionary] provisions to the attention of the insured" to take advantage of an exclusion. *Am. States Ins. Co. v. Surbaugh*, 745 S.E.2d 179, 184 (W. Va. 2013) (internal quotation marks omitted); *see also Luikart v. Valley Brook Concrete & Supply, Inc.*, 613 S.E.2d 896, 901 (W. Va. 2005) ("[T]he insurer may avoid liability by proving that *the insured read and understood the language in question,* or that the insured indicated his understanding through words or conduct." (internal quotation marks omitted)).  In Kentucky, an insurer may rely on exclusions in a policy, but the burden is on the insured to "insist on a copy of the policy."

*Ann Taylor, Inc. v. Heritage Ins. Servs., Inc.*, 259 S.W.3d 494, 498 (Ky. Ct. App. 2008) (internal quotation marks omitted). While *Ann Taylor* did not involve an additional insured, the court held that a certificate of insurance, akin to a brief summary of the policy, "should not be relied upon by a claimant for the full terms of the policy." *Id.* at 501. Here, American Towers states that it "relied on" certificates of insurance, which did not explicitly state the relevant exclusions. R. 152 at 13. Because the certificates did not include exclusions and Nationwide allegedly did not provide American Towers with a copy of the policy, American Towers contends that Nationwide cannot rely on those exclusions. *See* R. 140 at 18. The resolution of that issue is impacted by which state's law applies. Accordingly, the Court must look to Kentucky choice-of-law rules.

Under Kentucky law, the Court looks to the "most significant relationship" test in its choice-of-law analysis in a contract case. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013) (quoting Restatement (Second) of Conflict of Laws § 188(1) (1971) (the "Restatement")). In determining the most significant relationship, there are two relevant provisions of the Restatement: § 188 and § 6. Section 188(1) explains that the most significant relationship is determined "under the principles stated in § 6."

The § 6 principles include: the needs of the interstate and international systems; the forum's relevant policies; the relevant policies of other interested states, including their interests in the resolution of the issue at hand; the protection of justified expectations; the policies underlying the area of law; certainty, predictability and uniformity of the result; and ease in determination of the law. Restatement § 6(2). In applying § 6(2), § 188 directs courts to take into account the following factors: the location of the contracting and negotiation; the location of contract performance; the location of the contract's subject

matter; and the parties' domiciles, residences, places of incorporation, and places of business. Restatement § 188; *Hodgkiss-Warrick*, 413 S.W.3d at 878–79.

Given the multitude of factors, it is not surprising that they "need not be given equal weight," but rather are "relatively elastic, and in some cases equivocal." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th Cir. 1996). The Sixth Circuit has "stress[ed] the fact-driven nature of a choice of law question." *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 707 (6th Cir. 2002). In *International Insurance*, for example, the Sixth Circuit held that "the most significant factor," based on that case's facts, was "section 6(2)(d), the protection of justified expectations." 86 F.3d at 606. Under the facts here, the most important factor is the uniformity of results within the litigation, *see* Restatement § 6(2)(a), (f), which necessitates application of West Virginia law.

Applying West Virginia law will ensure that the Court uniformly interprets the single insurance policy in this litigation. The Court already decided that it will apply West Virginia law in the insurance dispute between BPI and Nationwide. *See* R. 163. That fight involves the same insurance contract, the same terms, and virtually all the same issues as in this quarrel between American Towers and Nationwide. In both cases, the Court must resolve, among other claims, whether the road failure constitutes an "occurrence" under the policy, whether certain exclusions apply, and whether a release agreement precludes coverage. *Compare* R. 136-1 (Nationwide's motion for summary judgment against American Towers), *with* R. 137-1 (Nationwide's motion for summary judgment against BPI). In fact, Nationwide incorporates at least four arguments from its motion against American Towers into its motion against BPI. *See* R. 137-1 at 26 ("The arguments put forth as to why the

claims are not covered as to American Towers would also apply as to BPI's attempts to recover for those claims as asserted against it.").

Given the overlap in issues, West Virginia law must apply to this dispute as well. Applying different law within the same litigation creates the unacceptable possibility of conflicting results. *See Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 153 (2d Cir. 2003) ("[B]arring extraordinary circumstances, only one state's law should govern an insurance agreement."); *Arcelormittal Plate, LLC v. Joule Technical Servs., Inc.*, 558 F. App'x 205, 211–12 (3d Cir. 2014) (applying the law of the state that "renders less likely the possibility that [the parties] will face varying obligations under the same policy"). This Court has also understood that "overall consistency is important in litigation." *Asher*, 737 F. Supp. 2d at 670. And consistency carries greater weight when interpreting the same provisions of the same contract in the same litigation. To maintain uniformity, West Virginia law must apply.

Nationwide disagrees, relying heavily on a case from the Superior Court of New Jersey. *See Johnson Matthey Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 593 A.2d 367 (N.J. Super. Ct. App. Div. 1991). Besides the fact that *Johnson* is not binding on this court, it is wholly inapposite. In that case, a Pennsylvania corporation sued its liability insurers to cover costs related to toxic waste claims. The toxic-waste disposal came from the corporation's New Jersey plant and ended up at different sites in New Jersey. *Id.* at 368. Even though the parties signed the insurance contract in Pennsylvania, were from Pennsylvania, and executed the policy in Pennsylvania, the court concluded that New Jersey law applied.

The *Johnson* court focused heavily on "New Jersey's paramount interest in the health and safety of its people." *Id.* at 371. The result of the insurance dispute could affect "whether or not a waste site is remediated or a toxic tort victim is compensated." *Id.* at 370.

Additionally, the Pennsylvania insurance company knew it was insuring a New Jersey risk. *Id.* at 372. None of those interests are present here.

Nationwide points to *Johnson*'s dicta that "the law of different states can control the decision of different issues" in an insurance contract. *Id.* at 375. But the problem here is different: Nationwide wants the Court to decide the *same* issues under *different* laws in the *same* case. *Johnson* does not treat with that concern, and thus has no impact on this decision.

Nationwide also argues that uniformity supports applying Kentucky law here, given that American Towers is a party to two related contracts that may use Kentucky law. *See* R. 167 at 11–12; R. 172 at 2. The two contracts are the Master Contractor Agreement between American Towers and BPI, and a release between American Towers and Rising Son, a tort victim from the road collapse. *See* R. 167-1 (Master Contractor Agreement); R. 167-6 (release). Those contracts are relevant, Nationwide says, because the Master Contractor Agreement is the reason American Towers became an additional insured, while the release agreement allegedly exempts Nationwide from coverage liability. *See* R. 167 at 11–12. Nationwide is not a party to either contract. It cites no authority that those contracts affect this choice-of-law decision. Indeed, Nationwide does not explain what possible inconsistencies might arise by applying different laws to the policy and the contracts. Therefore, the interest in applying uniform law between this insurance clash and those contracts is far weaker than the interest in applying uniform law to identical provisions in the same insurance policy.

The need for uniform application of law is one of the factors that distinguishes this case from the Court's earlier decision, *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662 (E.D. Ky. 2010), which also analyzed choice of law between an additional

insured and the insurer under Kentucky law. On the surface, the cases are parallel: In *Asher*, an out-of-state additional insured, Unarco, and an out-of-state insurance company, Lexington, contested choice of law. Unarco had hired Atlas, the named insured on Lexington's policy, to do various subcontracting work and wanted recovery from Lexington under the policy. *Id.* at 666–67. Lexington sought to apply Illinois law (the place of contract negotiation) to the dispute, while Unarco wanted Kentucky law. *Id.* at 667.

The Court held that Kentucky law applied, relying on the fact that Atlas was not involved in the litigation. The Court did acknowledge that "where the parties negotiate and agree on the terms of their contract is a significant contact." *Id.* at 672 (quoting Restatement § 188 cmt. e). But because the named insured was no longer before the Court, the location of contracting was not significant. *Id.*

Instead, the Court focused on Kentucky's interest. Kentucky had an interest in using its law because the tort occurred in Kentucky. *Id.* at 669. While this interest was not strong because the tort victims were absent from the litigation, Kentucky also had an interest in protecting corporations doing business within the state. *Id.* at 670. Unarco and Atlas contracted to perform work in Kentucky, and Kentucky law, not Illinois law, afforded greater protection to Unarco. The Court also concluded that the interest in uniformity favored Kentucky because Kentucky law "governed the determination of liability in tort in this matter," even though the victims had already settled the tort claim. *Id.* at 672.

Several factors distinguish this case from *Asher* and require application of West Virginia law. First, the uniformity concern in *Asher* pales in comparison to the acute concern of inconsistent results here if Kentucky law applied. Because the named insured was not involved in the *Asher* litigation, the Court had no occasion to consider the potential for

disparate results by using the laws from two states for the same terms in the same contract in the same litigation. That problem is squarely before the Court in this case, and for the reasons discussed above, necessitates using West Virginia law.

Second, the named insured in this policy, BPI, is a party in the litigation—unlike the named insured in *Asher*. That allows the Court to give some weight to the factors involving the location of contracting and negotiation. *See* Restatement § 188(2)(a), (b). While BPI did not file summary judgment motions on this specific issue between American Towers and Nationwide, it has filed summary judgment motions in this case and weighed in on its choice-of-law debate. *See* R. 163. BPI argued for West Virginia law, and this Court agreed. Importantly, the Court recognized that the "fortuitous fact" of the location of the accident "matters less than BPI's residence and the contract's multiple connections with West Virginia." *Id.* at 4 (citing *Hodgkiss-Warrick*, 413 S.W.3d at 879). BPI's presence in the case favors West Virginia law, even if the factors regarding the place of contract and negotiation do not have as much force because BPI is not involved in this specific dispute.

Third, Kentucky's interest is weaker here than in *Asher*, where the Court looked not only to the location of the tort, but also to Kentucky's interest in protecting corporations transacting within the state. In *Asher*, however, the additional insured wanted Kentucky law to apply. The opposite is true here. American Towers seeks to avoid Kentucky law, presumably because it affords American Towers less protection than West Virginia law. While Nationwide wants Kentucky law, it never conducted any business in Kentucky and had no specific expectation of Kentucky law applying. *See Asher*, 737 F. Supp. 2d at 671 ("[The insurer] did not specifically anticipate a risk in Kentucky . . . ."). Unlike *Asher*, using

Kentucky law in this dispute does not further the interests of corporations doing business in Kentucky.

Finally, the remaining Restatement factors, like the contract's subject matter and the residence of the parties, do not support either state's law. *See* Restatement § 188(2). Those factors are neutral in this case because neither American Towers nor Nationwide is incorporated or headquartered in Kentucky or West Virginia. Given Kentucky's weak interest, and the overwhelming interest in applying consistent law to the same insurance contract in this case, West Virginia law controls the dispute between American Towers and Nationwide.

## II.    Key Questions In This Case Depend On Unsettled Questions Of West Virginia Law

For the same reasons articulated in the Court's earlier opinion, R. 163, the analysis of insurance coverage turns in part on whether the claims arise from an "occurrence." *See* R. 136-1 at 15 (Nationwide's argument); R. 140 at 12 (American Towers' argument). The insurance policy covers damage caused by an "occurrence." R. 27-2 at 20. In *Cherrington*, the Supreme Court of Appeals of West Virginia reversed its earlier decisions and held that faulty workmanship could qualify as an "occurrence." 745 S.E.2d at 521. Because American Towers filed its lawsuit before the *Cherrington* decision, *Cherrington* would apply in this case only if it is retroactive. In an earlier opinion in this case, the Court certified the retroactivity question to the Supreme Court of Appeals of West Virginia, as well as the question of whether the road collapse here would qualify as an occurrence even if *Cherrington* did not apply retroactively. R. 163 at 7–8. The Supreme Court of Appeals of West Virginia has set the case for oral argument during the January 2015 term. Because the

Court has already postponed resolution of the summary judgment motions between BPI and Nationwide awaiting the final word on the retroactivity issue, R. 163 at 8–9, the Court will take the same measures here, and deny the motions for summary judgment without prejudice.

## CONCLUSION

Accordingly, it is **ORDERED** that the parties' motions for summary judgment, R. 136; R. 140, are **DENIED WITHOUT PREJUDICE**. The Court will entertain renewed motions for summary judgment after the Supreme Court of Appeals of West Virginia answers the certified questions from the previous order, R. 163.

This the 11th day of December, 2014.

Signed By:

*Amul R. Thapar*

United States District Judge