UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| AMERICAN TOWERS LLC, | ) |
| Plaintiff, | ) Civil No. 12-139-ART |
| v. | ) |
| BPI, INC., et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Like in the childhood game, the parties here attempt to pass around blame in the hopes that, when the Court or jury adjudicates fault, they will not be stuck holding the hot potato. Some of the parties are able to exit the game at the summary-judgment stage, while others must wait for the final adjudication of fault.

## BACKGROUND

The growing number of opinions in this case provides the full set of facts. *See* R. 162; R. 163. For the indemnity claims, the following summary suffices: American Towers, LLC sued BPI, Inc., alleging that BPI breached its contract during construction of a cell tower and access road. R. 162 at 1–2. According to American Towers, BPI's faulty construction resulted in the collapse of the access road. *See* R. 163 at 2. BPI, in turn, filed a third-party complaint against its subcontractors, McVey Land Development, LLC ("McVey") and Cumberland Valley Engineering, Inc. ("CVE"). R. 42. BPI, the general contractor for the project, hired McVey to build the access road and prepare the tower site. R. 169 at 2. BPI also hired CVE to provide engineering services, such as soil testing. R.

168-1 at 2. BPI seeks indemnity from McVey and CVE in the event BPI is liable to American Towers. R. 42 at 4. CVE, concerned about its liability as well, asks for indemnity from McVey. R. 50 at 5. CVE and McVey each filed motions for summary judgment against BPI, R. 168 (CVE's motion); R. 169 (McVey's motion); BPI filed cross-motions for summary judgment against CVE, R. 174, and McVey, R. 175; and McVey filed a motion for summary judgment against CVE, R. 170.

## DISCUSSION

The Court may grant summary judgment where the moving party demonstrates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a). At the summary-judgment stage, the Court takes the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If a reasonable fact finder could find for the non-moving party, then the Court may not grant summary judgment. *Cordell v. McKinney*, 759 F.3d 573, 579–80 (6th Cir. 2014).

**I.    CVE's Motion For Summary Judgment Against BPI Is Granted**

CVE is entitled to summary judgment against BPI on BPI's indemnity claim. Because BPI and CVE do not have a contract for indemnity, BPI's argument rests entirely on common-law indemnification. To succeed on the common-law theory, BPI must show that CVE is the primary tortfeasor. *See Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). Kentucky has recognized two situations appropriate for common-law indemnity: (1) where the party seeking indemnity was only constructively liable, and the other party was the active tortfeasor, such as in a master-servant relationship, and (2) where both parties have some fault, but one party "was the primary and efficient cause of the injury." *Id.* (internal quotation marks omitted). While the two categories enunciated by the Kentucky Supreme

2

Court are instructive, the indemnity determination comes down to whether the indemnitor (CVE here) was the "active wrongdoer or primarily negligent," while the indemnitee (BPI) was "only constructively or secondarily liable" to the plaintiff. *Id.* at 780–81 (internal quotation marks omitted); *Stanford v. United States*, 948 F. Supp. 2d 729, 745 (E.D. Ky. 2013). Because indemnity transfers all liability to one party, "[a]n indemnity claim must allege one tortfeasor's negligence is different in kind—categorically worse—than the other tortfeasor's." *Stanford*, 948 F. Supp. 2d at 745. But where the parties are *in pari delicto*, described as both "guilty of concurrent negligence of substantially the same character which converges to cause the plaintiff's damages," indemnity is not appropriate. *Degener*, 27 S.W.3d at 778.

The relevant facts, viewed in BPI's favor, are as follows: BPI hired CVE as a geotechnical engineer, and, according to BPI, their contract required CVE to test the soil at the tower compound site and notify BPI of the results. R. 174 at 1–2; R. 132 at 55–56. The purpose of the test was to make sure the fill material was adequate for construction. R. 132 at 55. It is undisputed that CVE never reported any results to BPI. R. 168-1 at 3; R. 132 at 56. BPI's representative stated that he was unaware of whether CVE ever performed any work to test the soil, but that BPI received a bill for soil tests.[1] *See* R. 132 at 55–56. According to American Towers' expert, who tested the soil after the road collapsed, no one had previously evaluated the fill material, and the soil had various problems, including erosion. *See* R. 129-1 at 11–12; R. 174-1 at 16–17.

---

[1] While BPI cites to the pages of the deposition that contain testimony about BPI's bill for soil tests, BPI makes no argument about the significance of the bill to its indemnity claim. BPI, as a sophisticated party, is capable of developing the points it believes are relevant to its position. The Court, in its role as a neutral arbiter, will not *sua sponte* create arguments that a sophisticated party decides not to make.

Viewing the facts in the light most favorable to BPI, the Court cannot conclude that there is an issue of fact as to whether CVE was primarily negligent. There is no evidence that CVE affirmatively knew that there were problems with the soil and withheld that information from BPI. Indeed, BPI does not cite to any portion of the record demonstrating that CVE actually performed a soil test. If CVE had known about dangers with the soil and not alerted BPI, then denial of CVE's motion for summary judgment might be appropriate.

Without evidence that CVE performed a soil test and failed to inform BPI of the results, BPI's only supportable argument is that CVE never tested the soil, in violation of their contract. The failure to inspect the soil, however, does not rise to the level of active negligence necessary for an indemnity claim. Kentucky courts have allowed indemnity where the indemnitor "created the danger." *Brown Hotel Co.*, 224 S.W.2d at 167. But where a party was "negligent in failing to discover the defect," that party was not the primary wrongdoer for purposes of indemnity. *Id.* The evidence in the record, even taken in BPI's favor, does not establish that CVE created any danger, as there is an absence of any evidence that CVE did any soil tests or knew of any soil issues. Rather, the evidence suggests that CVE may have been negligent by not testing the soil at all. Failing to test the soil is more like failing to discover a defect than actively creating a danger. Because BPI does not direct the Court to any evidence that CVE withheld soil-test results or knew of any dangerous soil conditions, BPI cannot point to any issue of fact showing that CVE is primarily negligent.

At most, the evidence in the record establishes that BPI and CVE were *in pari delicto.* CVE, relying on the Court's previous opinion, says that BPI was at fault because it breached the contract by not using a geotechnical engineer. *See* R. 162 at 6–7; R. 168-1 at 7. BPI did not fulfill its contractual obligation by simply hiring CVE as a geotechnical engineer. *Id.*

4

Rather, BPI had a duty to consult with a geotechnical engineer, like CVE, who would evaluate and approve the soil and fill material. *See* R. 162 at 6–7; R. 139-2 at 27. BPI never received any results and thus could not consult with CVE about the soil and fill material. By proceeding as though the absence of a report from CVE meant the soil-test results were satisfactory, R. 132 at 77, BPI breached its contractual duty, *see* R. 162 at 6–7. When BPI did not receive results from CVE, BPI could have hired another geotechnical engineer. But it did not. Instead, in violation of the contract, BPI continued with construction as though a geotechnical engineer had blessed the safety of the soil. Even taking the facts in the light most favorable to BPI, CVE and BPI both abdicated their respective responsibilities regarding soil testing. In short, they were *in pari delicto*. Accordingly, indemnification is not the proper remedy.

BPI says this case is analogous to an example in the Restatement in which indemnification was proper where the "indemnitor supplied a defective chattel or performed defective work upon land . . . and the indemnitee innocently or negligently failed to discover the defect." R. 174 at 3 (quoting Restatement (Second) of Torts, § 886(B)). BPI, however, has not offered any evidence that CVE supplied a chattel or performed any work on the land. As discussed above, the Court has no basis for determining that CVE ever performed a soil test. And CVE did not construct any part of the tower site or road, or perform any other work. *See* R. 174 at 1 ("[I]t is admitted that CVE was employed to perform Proctor [soil] tests at the tower compound site . . . ."). Indeed, CVE is more akin to the indemnitee in the Restatement example than the indemnitor—like the indemnitee, CVE failed to discover a defect. Instead of reinforcing BPI's position, the Restatement example buttresses CVE's motion for summary judgment. For all the reasons above, CVE is entitled to summary

judgment against BPI on BPI's claim of indemnity. Even though CVE is not liable to BPI under indemnity, CVE may still be apportioned fault if the evidence at trial demonstrates that CVE is at fault in the road's collapse, and BPI requests an apportionment instruction. *See* Ky. Rev. Stat. § 411.182; *Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 471 n.5 (Ky. 2001).

II.  **McVey's Motion For Summary Judgment Against BPI Is Denied In Part And Granted In Part**

BPI seeks indemnity from McVey on two grounds: contractual indemnity and common-law indemnity. R. 42 at 3. Contractual indemnity, as the name suggests, looks to "the provisions of the indemnity agreement itself" to determine liability. *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) (quoting *U.S. Fidelity & Guar. Co. v. Napier Elec. & Const. Co.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)). The contract requires McVey to indemnify BPI for McVey's "negligent acts or omissions" that cause damage, regardless of whether BPI's acts also cause damage. R. 169-1 at § 4.6.1. So, to succeed on contractual indemnification, BPI must establish McVey's negligence. To win under common-law indemnification, BPI must show that McVey was the primary wrongdoer. *Degener*, 27 S.W.3d at 780; *see supra* Section I. McVey contends that, as a matter of law, it was neither negligent nor the primary wrongdoer. Because issues of fact exist as to whether McVey was negligent, McVey is not entitled to summary judgment on the contractual indemnification claim. Summary judgment is appropriate to McVey on BPI's claim against McVey for common-law indemnification, however, as undisputed evidence demonstrates that McVey is entitled to judgment as a matter of law.

## A. Contractual Indemnification

BPI has introduced evidence demonstrating that a genuine issue of material fact exists as to whether McVey was negligent in construction of the access road. Taking the facts in the light most favorable to BPI, McVey was responsible for construction of the access road and, according to American Towers' expert, poor construction decisions caused the collapse. While McVey denies its responsibility for construction and disputes the expert's testimony, BPI has offered enough evidence to get past summary judgment.

To demonstrate that poor construction techniques caused the road to collapse, BPI relies on testimony from American Towers' expert, Fikret Atalay. Atalay testified that the road collapsed because of "poor construction decisions and techniques by the contractor." R. 129-1 at 15. According to BPI, McVey was "in charge" of the construction. *See* R. 132 at 31. While BPI supervised McVey's work, BPI's representative testified that BPI did not direct McVey as to "how their work was to be accomplished." *Id.* at 115. McVey contends that BPI directed certain parts of McVey's construction work. *See* R. 182 at 7. McVey also cites Atalay's testimony that the road, "as BPI built it, as the contractor built it," was "unstable." R. 129-1 at 31. The two parties thus dispute who had responsibility for the construction. Because the Court cannot weigh credibility at summary judgment, a genuine issue of material fact exists regarding who was responsible for the allegedly negligent construction.

In addition to faulting poor construction generally, Atalay also blamed improper foundation benching for the road's problems. *See* R. 129-1 at 15. McVey admitted that foundation benching was its responsibility. *See* R. 182 at 7 (admitting allegations from BPI's

motion, R. 175 at 5–6). Atalay stated that he "couldn't see any evidence that [foundation benching] had been done in accordance with what the project called for." R. 129-1 at 11. According to BPI, that statement shows that McVey did not adequately perform foundation benching. McVey counters with earlier parts of Atalay's testimony where he admits that he could not "definitively" conclude whether the foundation benching was inadequate. *Id.* McVey, however, does not argue that Atalay's testimony on foundation benching is so unreliable as to be inadmissible. *Cf. Burgett v. Troy-Bilt, LLC*, 579 F. App'x 372, 380–81 (6th Cir. 2014) (Stranch, J., concurring) (noting that "rejection of expert testimony is the exception not the rule" (internal quotation marks omitted)). Because the Court reviews Atalay's testimony at summary judgment, it must take that testimony in the light most favorable to BPI. From that perspective, Atalay's testimony blames a lack of foundation benching as part of the reason for the road's collapse. Accordingly, a reasonable fact-finder could conclude from Atalay's testimony that McVey inadequately performed foundation benching.

Similarly, Atalay's testimony creates an issue of fact regarding the composition of the fill material. Atalay testified that the fill material included rock pieces over three inches in size, which did not comply with the contract's specifications. *See* R. 129-1 at 14–15. McVey acknowledges that it was responsible for applying the fill material. *See* R. 182 at 7. McVey does not contend that it met the standard of care with the fill material it used. Rather, McVey says Atalay's testimony is unclear, and points to this Court's earlier statement that "Atalay's deposition testimony is not clear enough as to the content of the fill material to warrant summary judgment." R. 162 at 6. But there the Court looked at whether the testimony was enough to grant summary judgment. Here, BPI opposes summary judgment,

8

and so the Court must view Atalay's testimony in the light most favorable to BPI. In his deposition, Atalay said he "could visually observe" the large rock pieces. R. 129-1 at 15. While he may not be 100 percent certain, his statements create an issue of material fact as to whether McVey failed to use the proper fill material.

McVey contends that BPI has failed to establish causation, but Atalay's testimony also creates a genuine dispute on causation. Atalay specifically opined that the poor construction techniques caused the collapse of the road. R. 129-1 at 15. McVey admits that Atalay faulted poor construction techniques as a reason for the road's failure. R. 182 at 10. McVey, however, says that Atalay also blamed other problems for the road's collapse. *Id*. But multiple factors from different actors may cause a single harm without precluding a negligence finding as to each actor. That is why apportionment of fault and comparative fault exist. *See Owens Corning Fiberglas Corp.*, 58 S.W.3d at 479. Even without apportionment of fault, the contract between McVey and BPI obligates McVey to indemnify BPI even if BPI also caused the damages. *See* R. 169-1 at § 4.6.1. Therefore, Atalay's testimony is enough to get the issue of causation to the jury.

McVey responds that BPI needs its own expert testimony specifically showing that McVey, as opposed to BPI, was negligent. *See* R. 169 at 6–7; R. 182 at 12. But BPI has relied on expert testimony in the record demonstrating that improper construction techniques may have caused the road to collapse, and it has offered evidence from its non-expert witness that McVey was responsible for construction. Expert testimony is not required to identify who was responsible for the allegedly shoddy construction. And even for the facts that must be established by expert testimony, BPI need not rely on its own experts. Federal Rule of Civil Procedure 56(c)(1) permits the use of "materials in the record" such as depositions and

documents at summary judgment. Because Atalay's deposition is in the record, BPI may rely on it to contest McVey's summary judgment motion. *See* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2722 (3d ed. 1998) ("[D]epositions taken for purposes of another case also may be utilized [for summary judgment motions]."); *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (same).

McVey also argues that BPI, through its representative, Brent Wells, admitted that McVey is not at fault and thus BPI cannot contest McVey's liability. Wells testified that he was not aware of McVey failing to comply with any instructions. R. 132 at 150–51. He also testified that he had no information indicating that McVey had failed to exercise reasonable skill and care, and he believed McVey completed the project in a workmanlike manner. *Id.* at 161. Finally, he stated that, to his knowledge, he was not aware of any action or inaction by McVey that caused the road to collapse. *Id.* at 157.

Whether a statement is a judicial admission in a diversity case is a matter of federal law. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000). Because "the admissibility of evidence is a procedural matter," it is "governed by federal law." *Id.* A court's determination that a statement is a judicial admission is "an evidentiary ruling," as it "may exclude[] certain evidence." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997). Accordingly, the Court applies federal law.

For Wells' testimony to constitute a judicial admission, his statements must be "deliberate, clear and unambiguous." *Id.* Even with a deponent's clear statement, courts are "reluctant" to classify opinions and legal conclusions as admissions. *Id.* at 341. Courts are more willing to treat as judicial admissions statements by counsel, rather than statements by a party. *See Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 528 (6th Cir. 2014). Even

statements by counsel, however, probably fall short of judicial admissions when they are legal rather than factual in nature. In *MacDonald*, for example, counsel's statements on negligence and proximate cause were not "binding judicial admissions" because they were legal conclusions. 110 F.3d at 340.

Wells' statements do not constitute judicial admissions. As this Court explained before, Wells has not been disclosed as an expert who can discuss the standard of care. *See* R. 162 at 6. Because Wells is not an expert, his testimony on legal conclusions, such as whether McVey exercised reasonable care or caused the road to collapse, is not sufficient to grant McVey summary judgment. *See id.* (citing *L.F.P.IP, LLC v. Hustler Cincinnati, Inc.*, 533 F. App'x 615, 620–21 (6th Cir. 2013)). Wells is also not BPI's attorney, and so any of his statements are less likely to be considered admissions under Sixth Circuit precedent. *See Lee*, 760 F.3d at 528. Additionally, Wells' statement that he was unaware of any failure by McVey to comply with instructions, even if viewed as fact and not an opinion, is not a judicial admission. Wells did not affirmatively state that McVey followed all instructions. Nor did Wells declare that he knew with certainty that McVey complied with all instructions. If he had, perhaps those statements would fall under the judicial-admission umbrella. But all Wells admitted was that he was not "aware" that McVey violated the instructions. Wells' "qualified" statement does not constitute a clear, deliberate or unambiguous exoneration of McVey's actions. *MacDonald*, 110 F.3d at 340.

Nor does BPI's expert get McVey to summary judgment. The expert's report concluded that the road's collapse was "not a construction issue but a risk associated with the geological and soil conditions. . . ." R. 169-2 at 20. McVey does not contend that the report is an admission. Instead, McVey argues that the expert's finding requires summary

11

judgment for McVey. R. 169 at 6–7 (citing *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 253 (Ky. 1995), *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009)). In *Clark*, an Airco worker injured himself with a torch made by Hauck Manufacturing. *Id.* at 250. The worker sued Hauck, and Hauck sought indemnity from Airco. The Kentucky Supreme Court, without further discussion, noted that indemnity was not appropriate because Hauck's expert witness "admitted that Airco's actions did not cause the accident." *Id.* at 253. The court also stated that there could be "no indemnity without liability." *Id.* Because the trial court found Hauck not liable, Airco had no obligation to indemnify Hauck.

The Court is wary to rely on one unexplained statement in the *Clark* opinion regarding an expert's admission. The opinion does not discuss whether there were other experts in the case, the nature of the testimony by Hauck's expert, or any other specifics of the admission. Without that information, it is not clear what characteristics of the testimony precluded indemnity. For example, the *Clark* court also affirmed the lower court's decision to exclude part of the testimony from the plaintiff's expert. *See id.* Thus, it is possible that there was only one expert in the case (Hauck's expert) opining on Airco's liability, and that expert absolved Airco of liability. The expert also may have explicitly stated that Airco was not liable, or the expert may have generally blamed some other cause without specifically concluding that Airco was not liable. Because more detail is not available, the Court is reluctant to draw broad conclusions from one statement in *Clark*.

Even based on the scant details available, this case is distinguishable from *Clark* in two ways. First, the Court has not made any findings of liability. To the extent that *Clark* relied on a finding of liability, such a determination is not present here. Because liability is

still at issue, indemnity may be appropriate at a later time. The second distinguishing factor is the presence of conflicting expert testimony—American Towers' expert blames bad construction for the road's collapse, while BPI's expert blames soil conditions. The *Clark* court made no mention of conflicting expert testimony in that case. Because two experts disagree on the critical issues of this case, like causation, their testimony creates a genuine dispute of material fact for the jury. While it may seem odd that BPI argues against its own expert's interpretation here, BPI may rely on American Towers' expert for purposes of summary judgment. By relying on American Towers' expert, BPI establishes a genuine issue of material fact as to McVey's negligence. Accordingly, the Court will deny McVey's motion for summary judgment as to BPI's claim for contractual indemnity.

### B. Common-Law Indemnification

BPI also seeks indemnity pursuant to common-law indemnification. To succeed under the common-law theory, BPI must show more than just McVey's negligence—BPI must demonstrate that McVey was the primary tortfeasor. *Degener*, 27 S.W.3d at 780. Because BPI has not disputed that it was negligent in designing the road, the undisputed evidence does not show that McVey is the primary tortfeasor, but rather that the parties are *in pari delicto*.

The parties are *in pari delicto* because McVey offers testimony from Atalay, American Towers' expert, specifically blaming BPI for the road's collapse. *See* R. 129-1 at 25. Atalay stated that the failure "could have been prevented had BPI made sure that they had gotten an engineered design for their change," and that "it became BPI's responsibility to make sure that whatever alternative they had proposed was stable." *Id.* In an earlier order, the Court also concluded that a jury could find "that the contract required BPI to consult a

13

design engineer before" proposing its design plan to American Towers. R. 162 at 4–5 (citing expert testimony of Dr. Ihab Saad). In its briefing on these summary-judgment motions, BPI does not dispute Atalay's testimony. Nor does BPI dispute that McVey had no contractual obligation to consult engineers. And Atalay never states that the problems that BPI attributes to McVey, like improper foundation benching or fill material, were the primary cause of the road's collapse, as opposed to one cause of the collapse. While the Court views the facts in BPI's favor, the Court cannot create a dispute out of nothing.

BPI responds that McVey was the primary wrongdoer because BPI's only duty was to consult a geotechnical engineer. *See* R. 175 at 15. BPI acknowledges that it breached that duty, but says that such a breach is merely passive negligence, which pales in comparison to McVey's active negligence in constructing the road. If BPI's sole duty had been to consult a geotechnical engineer, perhaps the Court would deny McVey's motion for summary judgment. But BPI's duty extended beyond mere consultation. McVey has introduced undisputed testimony that BPI had other responsibilities that may have caused the road to collapse. Without testimony or other evidence in the record calling Atalay's testimony into doubt, the Court finds no issues of material fact remain for a jury. Accordingly, the Court grants McVey summary judgment on BPI's claim of common-law indemnification against McVey.

## III. BPI's Motion For Summary Judgment Against McVey Is Denied

The Court's denial of McVey's motion for summary judgment on contractual indemnification does not mean that BPI is entitled to contractual indemnification as a matter of law. For BPI to prevail, it must show there is no genuine issue of material fact as to McVey's negligence. But as discussed above, several issues of material fact exist. BPI's

own expert blames soil conditions for the collapse of the road, and BPI's representative testified that McVey followed all instructions. It would be inappropriate to grant BPI judgment as a matter of law where BPI's own witnesses argue that no negligence occurred.

Kentucky law also instructs courts to wait to grant indemnity until a fact finder determines liability. As the Kentucky Supreme Court has explained, "[i]ndemnity is not an issue until fault has been determined." *Clark*, 910 S.W.2d at 253; *cf. Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) ("In addressing Kentucky's common law indemnity claim, courts have repeatedly recognized liability as a prerequisite."). And that makes sense. If BPI is not liable to American Towers, as it argues in its case against American Towers, then BPI cannot get indemnity from McVey as there is nothing to indemnify. At this stage, neither the Court nor a jury has determined liability in this case, which precludes a finding of indemnity. Absent any rulings on liability, the Court denies BPI's motion for summary judgment.

## IV. McVey's Motion For Summary Judgment Against CVE Is Granted

McVey is entitled to summary judgment against CVE on CVE's claim of indemnity from McVey. To prevail on its claim for indemnity against McVey, CVE must demonstrate that McVey is the active tortfeasor under common-law indemnification. CVE, however, sets forth no facts on which a jury could find McVey negligent, let alone find that McVey was the primary wrongdoer. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" (internal quotation marks omitted)). CVE cites to no expert testimony regarding McVey's negligence or to any other evidence in the record that even

15

hints that McVey was at fault in the road's collapse. And CVE admits all the relevant material facts in McVey's motion. *See* R. 176 at 1. As a result, granting McVey's motion for summary judgment is appropriate.

CVE's response is that McVey's motion is premature. *See* R. 176 at 2. Even ignoring the fact that CVE itself filed a motion for summary judgment seeking indemnity in this case, *see* R. 168-1, McVey's motion is ripe for adjudication. While indemnity is appropriate only once the prospective indemnitee is liable, the alleged indemnitor may succeed at summary judgment if the indemnitee cannot show any disputed issues for trial. *See Siegel v. Dynamic Cooking Sys., Inc.*, 501 F. App'x 397, 406 (6th Cir. 2012) ("Summary judgment on the indemnity claim before resolution of the direct claim, moreover, was not an abuse of discretion."). CVE's failure to point to any fact suggesting that McVey was negligent requires the granting of McVey's summary judgment motion.

**CONCLUSION**

Accordingly, it is **ORDERED** that:

(1) CVE's motion for summary judgment against BPI, R. 168, is **GRANTED**. BPI's cross-motion for summary judgment, R. 174, is **DENIED**.

(2) McVey's motion for summary judgment against BPI, R. 169, is **GRANTED IN PART** as to common-law indemnification and **DENIED IN PART** as to contractual indemnification. BPI's cross-motion for summary judgment against McVey, R. 175, is **DENIED**.

(3) McVey's motion for summary judgment against CVE, R. 170, is **GRANTED**.

This the 17th day of December, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge