UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| AMERICAN TOWERS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-139-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| BPI, INC., et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In 2011 in Prestonsburg, Kentucky, a piece of road fell down a hill and damaged the Rising Son Church. The church has since been repaired. But the road's owner, American Towers LLC ("ATC"), and the road's builder, BPI, Inc. ("BPI"), disagree about who is responsible for its collapse. They do agree on one thing, however: regardless of who is responsible, the builder's insurance company, Nationwide Mutual Insurance Company ("Nationwide") has to pay for the damage. But Nationwide is not on their side. Nationwide claims that it has no duty to pay for the damage to the church because the road builder violated Nationwide's insurance policy when it settled with the church. ATC and BPI moved for summary judgment, claiming that Nationwide must pay for the damage as a matter of law. Nationwide also moved for summary judgment, arguing that it has no duty to pay for the repairs. For the reasons stated below, ATC's and BPI's motions are granted. Nationwide's motion is denied.

# BACKGROUND

ATC wanted to build a cell tower.  R. 134 at 18–19.  The company leased property from Rising Son Church in Prestonsburg, Kentucky.  *Id*. at 19.  ATC hired BPI to build the cell tower, compound, and access road according to ATC's specifications.  *Id.* at 18–20; R. 139-5 at 8.  The two companies executed a Master Contractor Agreement ("MCA"), and BPI began building.  *See* R. 138-2 (MCA); R. 134 at 19–20.  As a condition of the MCA, BPI secured a commercial general liability insurance policy ("CGLI policy") from Nationwide.  R. 138-2 at 9; R. 27-1.  The CGLI policy listed ATC as an additional named insured.  *Id.* at 63.

While building, BPI concluded that ATC's road design was flawed.  R. 134 at 74.  The construction plans called for two "switchback curves" near the top of the hill, but BPI thought it better to eliminate the switchbacks and take the road straight up the hill.  *Id.*  ATC approved the change.  *Id.* at 74–75.

Less than one year after construction, the access road collapsed in a landslide, damaging the Rising Son Church.  R. 132 at 40–43; R. 134 at 23.  The collapse also left the cell-tower compound inaccessible and useless.  *Id.*  ATC quickly settled with Rising Son, agreeing to pay for repairs to the church and the surrounding property.  R. 137-2 (settlement and release).  ATC also began repairing the access road.  R. 212 at 3.  The rebuilt road differed from the road called for in the MCA.  *Id.* at 11.

Then came a flurry of litigation.  ATC sued BPI, alleging that BPI breached the MCA and that BPI's faulty construction led to the collapse of the road.  R. 9.  Nationwide sought a declaratory judgment that it had no duty to indemnify BPI.  R. 27.  ATC sued Nationwide, alleging that Nationwide was responsible to ATC as an

additional named insured.  R. 9.  BPI sued its subcontractors, and the subcontractors sued each other.  R. 42; R. 50.

The Court winnowed the issues in this case in a series of opinions.  ATC's breach-of-contract claim against BPI is set for resolution at trial.  R. 162 (memorandum opinion and order, granting ATC's motion for summary judgment in part and denying BPI's motion for summary judgment).  The parties also disputed whether the CGLI policy covers the damages resulting from BPI's allegedly faulty workmanship.  R. 137-2.  Under the CGLI, Nationwide was obligated to pay for expenses ATC and BPI incurred from "occurrences" as defined by the policy.  *See* R. 27-1. Thus, if the road collapse qualified as an occurrence, Nationwide had to pay for the resulting damages.

In 2011, when BPI and Nationwide executed the CGLI policy, faulty workmanship was *not* an occurrence.  Under then-existing West Virginia law, which governs the coverage dispute, *see* R. 163 at 3–5, property damage resulting from faulty workmanship was not an "occurrence" triggering coverage under a CGLI policy.  *See Webster Cnty. Solid Waste Auth. v. Brackenrich & Assocs., Inc.*, 617 S.E.2d 851, 858 (W. Va. 2005), *overruled by Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508 (W. Va. 2013).

In 2013—after BPI and Nationwide executed the CGLI policy and after American Towers filed this suit—the West Virginia Supreme Court of Appeals reversed course.  In *Cherrington*, West Virginia's highest court held that faulty workmanship does constitute a CGLI-policy "occurrence."  *Cherrington*, 745 S.E.2d at 521.  In response to a certified question from this Court, R. 163, the West Virginia

3

Supreme Court of Appeals held that *Cherrington* applies retroactively. *BPI, Inc. v. Nationwide Mut. Ins. Co.*, No. 14-0799, 2015 WL 3387461, at *9 (W. Va. May 20, 2015). Thus, under West Virginia law, all of BPI's liabilities for faulty workmanship stem from a policy "occurrence," so the liabilities are covered by the CGLI policy.

As such, the only issues before the Court are: (1) the appropriate measure of damages for ATC's breach-of-contract claim against BPI and (2) Nationwide's obligations toward ATC and BPI. ATC, BPI, and Nationwide filed renewed motions for summary judgment on these two issues in the wake of the West Virginia Supreme Court decision. R. 205 (request for leave to seek a ruling on measure of damages); R. 213 (BPI's motion for summary judgment against Nationwide); R. 214 (Nationwide's motion for summary judgment against ATC and BPI); R. 215 (ATC's motion for summary judgment against Nationwide).

## DISCUSSION

The parties' motions present four issues to resolve: (1) whether the settlement ATC signed with Rising Son Church frees Nationwide of any indemnification obligations, (2) whether exclusions in the CGLI policy relieve Nationwide of its obligation to indemnify ATC, (3) whether the CGLI policy covers ATC's breach-of-contract claims against BPI, and (4) the appropriate measure of damages ATC may recover from BPI for the road collapse.

Summary judgment is appropriate when "the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

4

*Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)).  If the evidence is insufficient "to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)).

## I.     ATC's settlement and release with Rising Son Church

After the road collapse, ATC signed a settlement and release with Rising Son Church.  ATC agreed to pay the church $4,840 for the damage and to make necessary repairs to the church and surrounding property.  R. 141-9 at ¶¶ 1–3.  In return for ATC signing the settlement agreement, the church agreed to release ATC and its insurers and contractors from any further claims.  R. 141-9 at 6.  Nationwide argues that the release precludes any recovery by ATC for two reasons.  First, Nationwide argues that ATC released any claim ATC might have had against Nationwide.  Second, Nationwide argues that ATC breached the insurance contract by signing the release without notice to or consent from Nationwide.  Nationwide claims this breach of the insurance contract bars recovery.

### a.     The settlement and release between ATC and Rising Son Church does not release Nationwide from indemnifying ATC.

Nationwide first argues that the settlement and release signed by Rising Son Church and ATC extinguished Nationwide's liability to ATC.  Nationwide acknowledges that Rising Son Church, as the owner of the damaged property, could have asserted property damage claims under the CGLI policy.  But Nationwide claims the settlement extinguished those claims.  The settlement also stated that it released

5

claims against all insurers, R. 137-2 at 4. Because Nationwide is an insurer, Nationwide argues, the settlement released Nationwide from paying for the road collapse.

Nationwide is mistaken. The settlement with Rising Son extinguished all of Rising Son's claims against Nationwide. So under the terms of the settlement, Rising Son may not sue Nationwide. But the release says nothing about whether ATC may do so. The CGLI policy requires Nationwide to pay "those sums that [ATC] is required to pay as damages to a third party." R. 214-1 at 8. Nothing in the settlement bars ATC from recovering from Nationwide "those sums" it was "required to pay as damages to a third party," namely, Rising Son Church. And this makes sense. After all, this was a settlement between Rising Son and ATC. Obviously, Rising Son simply wanted to be made whole. In a settlement, it is routine for the defendant to make sure their insurers are released. Rising Son would not ask for and did not care if ATC received indemnification from its insurers.

Nationwide's relies on *Abney v. Nationwide Mutual Insurance Co.*, 215 S.W.3d 699 (Ky. 2006), to support its position that the settlement extinguished any claims ATC had against Nationwide. In *Abney*, a plaintiff sought to recover from both a tortfeasor and her insurance company. *Id.* Here, ATC is the tortfeasor and seeks indemnification from its own insurer. So *Abney* does not apply.

Nationwide also argues that it need not indemnify ATC because ATC voluntarily settled with Rising Son. Because ATC was under no duty to pay money to Rising Son, Nationwide asserts that it cannot be expected to indemnify ATC. *See Am. Nat'l Assurance Co. v. Ricketts*, 19 S.W.2d 1071 (Ky. 1929) (holding that an

6

insurance company could not recover money it voluntarily paid to a salesman). But ATC did not "voluntarily" pay for the damage to Rising Son—it had a legal obligation to do so. ATC's construction project had resulted in damage to Rising Son, R. 132 at 85–86; R. 134 at 35–36, and ATC had a duty to pay for this damage. *See*, *e.g.*, *Kenney v. Liston*, 760 S.E.2d 434, 445 (W. Va. 2014) (holding that "the law establishes a legal duty for a tortfeasor to repair any damage or losses carelessly inflicted upon a victim"). So Nationwide's citation to *Ricketts* is inapposite.

ATC's settlement with Rising Son releases Nationwide from any liability to Rising Son. But it does not release Nationwide from its indemnification duties to ATC. Indeed, the settlement *triggers* Nationwide's duty to indemnify ATC. *See* R. 214-1 at 8. And ATC's settlement with Rising Son was not voluntary. So the settlement with Rising Son did not release Nationwide from its obligations under the CGLI.

> **b.** **Nationwide must indemnify ATC even though ATC neither notified Nationwide of the settlement nor obtained Nationwide's consent to settle.**

Nationwide also argues that it does not have to pay ATC because ATC signed the settlement in violation of the CGLI policy. Under that policy, ATC was required to notify Nationwide of any policy "occurrence" that might result in a claim and to obtain Nationwide's consent before it could "voluntarily make a payment, assume any obligation, or incur any expense." R 27-2 at 30. Because ATC neither notified Nationwide of the settlement nor obtained Nationwide's consent to sign the settlement, Nationwide claims it need not indemnify ATC.

### i.        Lack of notice

Nationwide's lack-of-notice argument is unpersuasive.  Under the CGLI, ATC and BPI had to notify Nationwide of "occurrences," R. 27-2 at 30. The road sliding down the hill was an "occurrence," and both companies notified Nationwide of this event.  *See* R. 134-3 at 84–85.  But the policy contains no clause that expressly requires ATC to notify Nationwide of settlements.  So ATC did not breach the CGLI by failing to notify Nationwide of its settlement with ATC.

But even if the CGLI did not expressly require notification of settlements, one might argue that notice of settlements was implied by the policy's consent-to-settle provision.  The CGLI contract requires ATC to obtain Nationwide's consent before settling any claims.  Nationwide could not consent to claims about which it had no notice.  So a duty to notify Nationwide of any pending settlements could be implied into the policy.

Assuming that the policy did require ATC to notify Nationwide of any settlements, Nationwide must do more than point to a delay or lack of notice of a settlement as a reason to deny coverage.  R. 214-1 at 13.  Rather, the law requires that the insurer "must demonstrate that it was prejudiced by the policyholder's delayed notice."  *Colonial Ins. Co. v. Barrett*, 542 S.E.2d 869, 873 (W.Va. 2000).  While *Colonial Insurance Co.* involved delayed notice of a claim rather than delayed notice of a settlement, Nationwide concedes that it needs to show prejudice to prevail.  R. 214-1 at 13.  The Court takes Nationwide's assertion at face value.  So Nationwide must demonstrate sufficient prejudice to prevail on a lack of notice claim.

Nationwide identifies two ways in which it was prejudiced by ATC's actions. Nationwide first contends that it was prejudiced by ATC settling with Rising Son because ATC reached a settlement with Rising Son without its input.  Yet Nationwide offers no evidence showing that Nationwide's participation in the settlement negotiations would have changed the outcome of these negotiations.  Nationwide could have presented experts or even its own adjusters to show how its input would have affected the negotiations, but it chose not to present any evidence on this point. Without any evidence of how Nationwide's lack of input affected the negotiations, no reasonable jury could find that Nationwide was prejudiced by a lack of notice of the settlement.  So this claim must fail.

Second, Nationwide contends that it was prejudiced because it could not investigate the validity of Rising Son's claim or the reasonableness of the repair costs before ATC incurred obligations.  This inability to investigate is particularly prejudicial, Nationwide asserts, because ATC undertook repairs at an exorbitant price and incurred obligations beyond the damages available under Kentucky law.  Here again, however, Nationwide presents no evidence to show what damages Rising Son could have recovered under Kentucky law.  Nor has Nationwide presented any evidence to back up its claim that the Rising Son repair costs were exorbitant. Nationwide could have offered evidence of how costs could have been lowered or repairs could have been made more reasonably, but Nationwide failed to do so. Nationwide offers no evidence to support its claim of prejudice, an element of its case on which it would bear the burden of proof at trial.  *See Colonial Ins. Co.*, 542 S.E.2d at 873.  Thus, no reasonable jury could find Nationwide was prejudiced by ATC's

settlement with Rising Son.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Moreover, the West Virginia Supreme Court's reasoning in *Colonial Insurance Co.* supports the conclusion that Nationwide has not shown a genuine case as to prejudice.  542 S.E.2d 869.  In *Colonial Insurance Co.*, the court said that notice provisions should not "be read as a series of technical hurdles" that bar coverage of claims.  *Id.* at 874.  Instead, courts should look to whether "the insurer [was] able to adequately investigate the claim and estimate its liabilities."  *Id.* (quoting *Petrice v. Fed. Kemper Ins. Co.*, 260 S.E.2d 276, 278 (W. Va. 1979).  Here, Nationwide knew that the road had collapsed and sought information from ATC related to the collapse. R. 134-3 at 86–87.  It was aware that ATC alleged one of its insureds was responsible for the damage and that ATC was undertaking repairs.  *Id.*  Because Nationwide had sufficient notice to allow it to "investigate the claim and estimate its liabilities," Nationwide was not prejudiced by the lack of notice of the settlement.

### ii.    Lack of consent

Nationwide's second argument—that it need not indemnify ATC because it did not consent to ATC's settlement with BPI—is also without merit.  In *Kronjaeger v. Buckeye Union Insurance Co.*, the West Virginia Supreme Court of Appeals held that an automobile insurer "must show that it was prejudiced by its insured's failure to obtain its consent to settle in order to justify a refusal to pay underinsured motorist benefits." 490 S.E.2d 657, 669 (W. Va. 1997).  *Kronjaeger* differed from this case, as

it involved an insured motorist settling with a tortfeasor's insurance company without the consent of her own insurance company. Here, ATC is a tortfeasor who failed to obtain consent from its own insurer before settling with a third party. Although *Kronjaeger* is not exactly analogous to the case at hand, West Virginia law favors the requirement that an insurer show it was prejudiced by an insured's actions if the insurer seeks to deny coverage. *See Colonial Ins. Co.*, 542 S.E.2d at 874 (requiring an insurer to show prejudice from an insured's failure to notify); *Bowyer by Bowyer v. Thomas*, 423 S.E.2d 906, 910 (W. Va. 1992) (requiring an insurer to show prejudice from an insured's failure to cooperate). But Nationwide demonstrates no such prejudice. Nationwide offers no evidence of how Nationwide was harmed by ATC's failure to obtain its consent. Without such evidence, no reasonable jury could find that Nationwide was prejudiced by ATC's violation of the consent-to-settle provision.

Moreover, the West Virginia Supreme Court of Appeals' reasoning in *Kronjaeger* supports the conclusion that Nationwide was not prejudiced. In *Kronjaeger*, the court suggested that the insurance company was not prejudiced by Kronjaeger's failure to obtain her insurer's consent to a settlement because she timely notified the insurer of the accident and her resulting injuries. 490 S.E.2d at 670. This notice informed the insurer of the damages, so the insurer was not harmed by her violation of the consent-to-settle provision. *Id.* at 671. Here, Nationwide likewise had notice of the road collapse and ATC's desire to begin repairs immediately. R. 134-3 at 87.

In sum, Nationwide bears the burden of proving that a policy violation, such as lack of notice or consent, bars coverage for ATC's settlement with Rising Son.

11

*Colonial Ins. Co.*, 542 S.E.2d at 873.  To show either of those things, Nationwide must demonstrate sufficient prejudice.  But Nationwide presented no evidence—other than bare assertions—that it was sufficiently prejudiced by either a lack of notice or consent.  Without such evidence, no reasonable jury could find that ATC's actions released Nationwide from its responsibility to indemnify ATC under the CGLI.  Thus, the Court must grant ATC's motion for summary judgment on the coverage claim. *See Celotex Corp.*, 477 U.S. at 323 ("The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (internal quotations omitted)).

## II.    Coverage under the CGLI policy and the "impaired property" policy exclusion

The CGLI policy obligates Nationwide to pay any damages BPI is liable for as a result of "property damage."  R. 27-2 at 20.  The policy defines "property damage" as either "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." *Id.* at 34.  On its face, the policy covers the damage to both ATC's property and to the Rising Son Church.

But there are coverage exclusions in the CGLI policy.  One such exclusion is m(2), the "impaired property" exclusion.  The impaired property exclusion provides that the policy does not cover:

> "'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in [BPI's] product or [BPI's] work; or (2) A

delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." *Id.* at 24.

The policy goes on to define "impaired property" as:

> "Tangible property other than [BPI's] work, that cannot be used or is less useful because:
> (a) It incorporates [BPI's] product or [BPI's] work that is known or thought to be defective, deficient, inadequate or dangerous; or
> (b) You have failed to fulfill the terms of a contract or agreement;
> if such property can be restored to use by [] repair…or [BPI's] work or [BPI] fulfilling the terms of the contract or agreement." *Id.* at 32.

There is an exception to exclusion m(2). The exclusion does not apply (and thus the CGLI policy does apply) if the loss of use of property is the product of "sudden and accidental physical injury" to BPI's work after BPI's work has been "put to its intended use." *Id.* This exception allows ATC to recover if the access road failed after it was already being "put to its intended use," and this failure was caused by a "sudden and accidental" injury.

Nationwide offers two arguments as to why the CGLI policy does not cover the damage from the road collapse. First, Nationwide argues that ATC's leasehold is not "tangible property" because Rising Son actually owned the underlying land. And if ATC's leasehold interest is not tangible property, then it cannot suffer "property damage" as defined in the policy. So, Nationwide argues, the road collapse is not covered by the CGLI policy.

Yet Nationwide does not explain why leased land is not "tangible property" under the CGLI. Nothing in the insurance contract indicates that the ownership of the injured property makes any difference. Indeed, at least two provisions of the contract specifically contemplate that property "own[ed], rent[ed], or occup[ied]" can suffer

13

"property damage." *Id.* at 23 (section j(1)); *id.* at 28 (section 2a(2)).   Therefore, Nationwide's argument fails.  *See Cherrington*, 745 S.E.2d at 527 (holding that insurance policy exclusions are "strictly construed against the insurer").

Second, Nationwide argues that even if the leasehold *is* tangible property, any damage arising out of the loss of the use of the lease falls within exclusion m(2) as "impaired property."  Why?  Because the loss of use of the lease stems from BPI's failure to fulfill the terms of the MCA, and the loss of use can be remedied by repairing BPI's work.

This argument also fails because Nationwide ignores the exception to exclusion m(2).  Exclusion m(2) does not apply if ATC can demonstrate that the "loss of use" of the road arose out of "sudden and accidental physical injury" to BPI's work after the road was put to its intended use.  ATC satisfies both prongs of the exception. The parties do not dispute that the rainstorm and landslide that destroyed the access road were a sudden and accidental injury—Nationwide does not even attempt to contest the point.  And it is undisputed that BPI's work—the access road—was put to its intended use before the landslide.  *See* R. 213-1 at 3–4 (noting that BPI finished the access road in October of 2010, but the road did not collapse until six months later); R. 214 at 2 (acknowledging the same timeline).  Thus, ATC's claim fits within the exception to exclusion m(2).

### III.   ATC's breach-of-contract claims against BPI do not bar coverage under the CGLI policy

Nationwide also tries to avoid liability by arguing that all of ATC's claims against BPI are breach-of-contract claims.  Nationwide first contends that breach-of-

14

contract claims are not "occurrences" within the meaning of the CGLI policy. Nationwide next argues that a policy exclusion—exclusion 2(b)—bars coverage for breach-of-contract claims. Nationwide is mistaken on both counts.

When arguing that breach-of-contract claims are not "occurrences" under the CGLI policy, Nationwide conflates the theory of recovery with the substance of the underlying claim. But the Court looks to the language of the insurance policy, not the form in which the injury is pled, to determine whether a particular injury is covered. *See Smith v. Animal Urgent Care*, *Inc*., 542 S.E.2d 827, 834 (W. Va. 2000) (holding that an "intentional acts" exclusion barred coverage in a dispute even though the complaint alleged only negligence); *see also State Auto Prop. & Cas. Ins. Co. v. Wohlfeil*, 889 F. Supp. 2d 799, 802 (N.D. W. Va. 2012) (holding that claims need only be "reasonably susceptible of an interpretation that they are covered by the insurance policy" to trigger an insurer's duty to defend a policy holder) (quoting *Bruceton Bank v. United States Fid. & Guar. Ins. Co*., 486 S.E.2d 19, 20 (W. Va. 1997)).

ATC is not barred from recovering on its claims simply because it pled a breach of contract rather than a tort. As the Court indicated in its Certification Order, the substance of ATC's claim is that the defects in the access road resulted from faulty workmanship. R. 163 at 5. Under *Cherrington*, faulty workmanship that causes property damage is an "occurrence" covered by a standard CGLI policy. 745 S.E.2d at 521. And *Cherrington* applies retroactively to cover the claims in this case. *BPI, Inc.*, 2015 WL 3387461, at *9. As a result, the CGLI policy in this case covers ATC's faulty workmanship claim.

Nationwide's argument that exclusion 2(b) in the insurance policy bars coverage of breach-of-contract claims is also flawed.  Exclusion 2(b) provides that the policy does not cover "'property damage' for which [BPI] is obliged to pay damages by reason of assumption of liability in a contract or agreement" unless the contract is an "insured contract."  R. 27-1 at 21.  Contrary to Nationwide's claim, exclusion 2(b) does not refer to breach-of-contract claims at all.  Rather, "assumption of liability in a contract or agreement" refers to BPI's agreement to indemnify a third party.  *Marlin v. Wetzel Cnty. Bd. of Educ.*, 569 S.E.2d 462, 469 (W. Va. 2002) ("We hold that the phrase 'liability assumed by the insured under any contract' in an insurance policy, or words to that effect, refers to liability incurred when an insured promises to indemnify or hold harmless another party, and thereby agrees to assume that other party's tort liability.").  Accordingly, exclusion 2(b) does not bar coverage for breach-of-contract claims.

Nationwide cannot prove that any policy exclusions bar coverage—a burden it would bear at trial.  *Cherrington*, 745 S.E.2d at 526.  And as a matter of West Virginia law, property damage arising out of faulty workmanship is a CGLI policy "occurrence."  *Id.* at 521.  As a result, ATC and BPI are entitled to summary judgment on their coverage claims.

## IV.   Calculation of Damages for the Road Collapse

ATC and BPI requested that the Court order briefing on what measure of damages applies to the road collapse.  R. 205.  Before addressing what measure of damages applies, the Court must first determine which state's law applies.  The Court applies Kentucky's choice of law rules to resolve this question.  *Sec. Ins. Co. of*

16

*Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) ("In a diversity action, the district court is obligated to apply the choice of law rules of the state in which it sits.").  Under Kentucky law, the Court must conduct a choice-of-law analysis only if the states' laws conflict.  *See Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010).  Both West Virginia and Kentucky use diminution of value as the standard measure of damages available in a breach-of-contract construction case.  *Compare State Prop. & Bldgs. Comm'n of Dept. of Fin. v. H. W. Miller Const. Co.*, 385 S.W.2d 211, 214 (Ky. 1964), *with Trenton Const. Co. v. Straub*, 310 S.E.2d 496, 499 (W. Va. 1983).  Since there is no conflict, Kentucky law applies.

The parties disagree as to the appropriate measure of damages for the collapse of the access road.  According to BPI, ATC's damages are the reasonable cost of repairing the access road back to the original MCA design.  R. 216 at 8.  ATC counters that its damages are the actual costs to repair the access road.[1]  R. 212 at 1. In this case, ATC argues, the necessary repairs included some variations from the MCA—such as eliminating the switchbacks and using better, more stable materials. *Id.* at 8–9.  ATC claims that "conforming with the original requirements of the MCA would have been unreasonably cost prohibitive" in the wake of the road collapse.  *Id.* at 10.  So ATC asserts that it is entitled to full reimbursement of its repair costs.

---

[1] ATC concedes it is not entitled to a refund of the contract payments to BPI.  R. 214 at 23–24.

Because ATC alleges that BPI defectively performed a construction contract, the proper measure of damages is the reasonable cost of remedying the defect. *State Prop. & Buildings Comm'n*, 385 S.W.2d at 214. The *State Property* Court explained that the "reasonable cost" of remedying the defect is generally capped at the difference between the market value of the road described in the MCA and the market value of the road that BPI built. *Id.* So damages should not exceed what is required to put ATC in the same position it would have occupied if BPI had complied with the MCA. *Id.* BPI does not have to pay for a better road than what the MCA required. *Id.* ("A stone wall, for example, could not be built and charged to the contractor because he failed to put up a wood or wire fence."). The *State Property* rule holds true even if, as ATC alleges, it would be infeasible or too expensive to repair the road to conform to the MCA. *Baker Pool Co. v. Bennett, Ky.*, 411 S.W.2d 335, 338 (Ky. 1967) ("[I]f the expense of repair is unreasonable, the test is the difference between market value of the building as it should have been constructed and the market value as it actually was constructed.").

ATC makes five arguments to try to get around the *State Property* rule. First, ATC argues that it can recover the costs of repairing the road as long as the costs were "reasonable." Second, ATC contends that because it rebuilt the access road to mitigate its damages from BPI's breach, BPI is liable for the rebuilding costs. Third, ATC claims that the fair market value of the road is equal to the cost to repair the road. Fourth, ATC asserts that BPI warranted the road against defective workmanship and agreed to indemnify ATC against "all claims, damages, and expenses of every kind and nature relating to BPI's work," thus BPI is on the hook for

18

repair costs.  R. 212 at 18 (quoting R. 141-5 at §§ 4.5.1, 4.6.1).  Fifth, ATC alleges that ATC's willful breach of the MCA entitles ATC to recover its actual costs of repair.

*Reasonable Costs of Repair*: ATC contends that it is entitled to recover the reasonable costs of repairing the defective access road.  ATC argues that because all of its costs to repair the road were reasonable under the circumstances, it should be allowed to recover all of these costs from BPI.  Yet ATC appears to misunderstand the *State Property* rule.  As explained above, the aggrieved party in a breach-of-construction-contract case can recover the "reasonable" costs of repairing the defective construction.  *State Prop. & Buildings Comm'n*, 385 S.W.2d at 214.  But under *State Property*, expenses are reasonable only if they do not "exceed the difference . . . between [the road's] market value as it should have been constructed and its market value as it was actually constructed."  *Id.*  Here, the value of the road "as it should have been constructed" is the value of the road built to the specifications of the MCA.  So ATC cannot recover more than it would have cost to repair the road to comply with the MCA design.

*Mitigation of Damages*: ATC next argues that BPI is liable for ATC's efforts to mitigate its damages.  ATC acknowledges that it had a duty to mitigate its damages after BPI's breach.  R. 212 at 11 (citing *Deskins v. Estep*, 314 S.W.3d 300, 305 (Ky. Ct. App. 2010)).  But ATC argues that BPI must pay for these efforts because ATC made a reasonable choice about how to mitigate its damages even though some of these efforts differed from the requirements of the MCA.  *Id.* (citing *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 852 (Ky. Ct. App. 2014)).  ATC claims that its

mitigation efforts were reasonable because it was "practically impossible" and "prohibitively expensive" to build a road that complied with the MCA. *Id.* ATC asserts that these decisions—although they resulted in a road that did not comply with the MCA—were the most reasonable way to repair the road under the circumstances. *Id.*

Because ATC had a duty to mitigate its damages, it can recover from BPI for the cost of its reasonable mitigation efforts. *See Deskins* 454 S.W.3d at 305. Yet ATC must prove two things to establish that its mitigation efforts were reasonable. First, it must prove that repairing the access road at all was a reasonable mitigation effort. *Id.* ("It is well-established that a party claiming damages for a breach of contract is obligated to use *reasonable efforts* to mitigate its damages occasioned by the other party's breach." (emphasis added)). Second, if repairing the road was a reasonable mitigation effort, ATC must prove that its choices about how to repair the road, such as eliminating the switchback and leaving the fill soil, were also reasonable. If ATC's mitigation efforts were unreasonable, then BPI is not liable for these increased costs. *United States Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 298 (Ky. 1933) (holding that a plaintiff cannot recover for damages which he "might have prevented by the use of reasonable efforts, expense, and diligence"). And reasonableness in the mitigation context is a question for the trier of fact. *Hicks v. Don Marshall Nissan, LLC*, No. 2007-CA-000679-MR, 2011 WL 1900147, at *5 (Ky. Ct. App. May 20, 2011) (holding that whether the plaintiff "took reasonable actions to mitigate its damages" is an issue of fact). So ATC must prove to a jury that its mitigation efforts were reasonable to prevail on this claim.

*Fair Market Value*: When calculating damages, ATC urges the Court to find that the fair market value of the access road equals the cost of repairing the road. R. 212 at 12–13 (citing *Ellison v. R. & B. Contracting, Inc.*, 32 S.W.3d 66, 68 (Ky. 2000)).   Under this theory, ATC could recover its full cost of repair under *State Property* because the value of the road it received from BPI would be diminished by ATC's repair costs.   ATC's reliance on *Ellison* is misplaced.  In *Ellison*, the Court found that a plaintiff can introduce evidence of repair costs to plead a prima facie case because "reasonable inferences [of fair market value] may be drawn from evidence of restoration cost." *Id.* at 74.  But here the issue is the measure of damages, not what evidence is sufficient to plead damages.  And the law is clear that damages are capped at the difference between the road BPI built and the road BPI should have built under the MCA. *State Property & Buildings Comm'n*, 385 S.W.2d at 214.  Even *Ellison* acknowledges this established rule.  32 S.W.3d at 70.  So the fair market value of the road BPI built is not equivalent to ATC's costs to repair the road.

*Warranty and Indemnification*: ATC alleges that the warranty and indemnification clauses of the MCA make BPI liable for all of ATC's repair costs. This argument is not persuasive.  ATC alleges that BPI breached its warranty that the access road "would conform, in all respects, to the requirements of the Contract Documents." R. 141 at § 4.5.1.  But ATC does not explain why breaching the warranty makes BPI liable for all of ATC's repair expenditures—especially since ATC ultimately rebuilt the road to differ from the MCA requirements.  Nor does ATC explain why the indemnification clause obligates BPI to pay for road reconstruction. BPI's indemnification duty is triggered by a third-party claim against ATC—that is

the nature of indemnification agreements.   And an indemnification clause only obligates BPI to pay whatever damages ATC owes to the third party.  ATC is raising a first-party claim against BPI for breach of contract, so the indemnification clause is not implicated.

*Willful Variance from the Contract:* Finally, ATC argues that BPI should compensate it for the entire cost of building a new road because BPI willfully breached the contract when it used fill soil that did not comply with the terms of the MCA.  R. 212 at 12 (citing *Young v. Cumberland Cnty. Educ. Soc*., 210 S.W. 494 (Ky. 1919)).  *Young* held that "where the contractor willfully varies from the contract by using materials not only different from those contracted for, but wholly unsuitable for the purpose, the true measure of damages is the actual cost of reconstructing the building according to the contract."  *Id.* at 496.  However, *Young* is not applicable here.   Since *Young*, the Kentucky Supreme Court addressed the issue of the appropriate measure of damages for breach of a construction contract.  *See State Property & Buildings Comm'n*, 385 S.W.2d at 214.  The Kentucky Supreme Court has given no indication that there is a "willfulness" exception to the *State Property* rule.  This Court declines the invitation to create one.

Therefore, ATC's recoverable damages are limited to the difference between the value of the road described in the MCA and the road that BPI built.  To recoup the full costs of rebuilding the access road as mitigation costs, ATC must prove to a jury that its mitigation efforts were reasonable.

## CONCLUSION

Neither the settlement agreement between ATC and Rising Son nor any exclusion in Nationwide's CGLI policy precludes coverage for ATC's claims. And to the extent that BPI is liable to ATC for faulty workmanship in constructing the road, BPI is covered by its insurance policy with Nationwide.

Under Kentucky law, ATC cannot recover more than the "reasonable costs" of repairing the road, as measured by the difference between the value of the road BPI built and the road BPI was contractually obligated to build. To the extent that ATC seeks to recover the costs of mitigating its damages, it must prove at trial that its mitigation actions were reasonable.

Accordingly, it is **ORDERED** that:

(1)   BPI's motion for a ruling on the measure of damages, R. 209, is **GRANTED**. The measure of damages is the difference between the value of the road BPI built and the road BPI was obligated to build under the MCA.

(2)   BPI's motion for summary judgment against Nationwide, R. 213, is **GRANTED**. Nationwide's CGLI policy provides BPI with coverage to the extent that BPI is liable on ATC's damages claims.

(3)   ATC's motion for summary judgment against Nationwide, R. 215, is **GRANTED**.

(4)     Nationwide's motion for summary judgment against BPI and ATC, R. 214, is **DENIED**.

This the 14th day of September, 2015.

Signed By:

*Amul R. Thapar*

**United States District Judge**